L. BALK CO-OPERATIVE COMPANY, INCORPORATED, com-
plainant,

v.

INTERNATIONAL FUR WORKERS UNION OF THE UNITED
STATES AND CANADA et al., defendants.

[Decided January 10th, 1924.]

On appeal from a decree of the court of chancery advised
by Vice-Chancellor Buchanan.

MINTURN, J. (dissenting).

The active litigating parties to this controversy were en-
gaged in the manufacturing business at New Brunswick, in
this state. The complainants not only own the plant, but
persist in the feudal claim that they own the labor of their
employes as well, upon the strength of our decision in *Bren-
nan* v. *United Hatters, 73 N. J. Law 749,* a determination
which must be now read in conjunction with our recent de-
cision in *Courtinard* v. *Gray Burial Co.,* where the right of a
servant to freely choose his employer and employment is vin-
dicated upon the theory that he is a sentient being, endowed
with the human faculties of will, memory and understand-
ing, and as such capable of being argued with and convinced
by the persuasion of his fellow-man, when such arguments
are unaccompanied by force. This right was also accorded
to him over twenty years ago by Vice-Chancellor Pitney in

*Frank* v. *Herold, 63 N. J. Eq. 443.* These two defendants were not parties to the suit, nor were they parties to the injunctive order to show cause which in this proceeding answers the purposes of an indictment in the criminal law. Nor was the order served upon Goldenburg, whose only knowledge of its contents consisted in what he had casually heard, without reference to its details. At law, manifestly, a conviction obtained upon an indictment under such circumstances could not stand. He was not in the employ of complainants, but had recently joined the labor union. He was employed in a similar business in Newark, and,. of course, was interested in the strike at complainant's plant, and during his spare time went to New Brunswick to see his fellow-workers, and to attend their public meetings, rights and privileges, which he had a legal right to exercise as a citizen. He did not picket but walked the streets, and never went nearer than the distance of a block to the plant. · But three employes, who plainly prevaricate in their statements, one of whom the trial court expressly discredited, charged defendant with stating, "don't you fellows go to work. If you do we'll get you." He denied this charge, and in a court of law his denial would purge him of guilt, and would entitle him to an immediate discharge from custody. *6 R. C. L. 534.*

To entertain a reasonable doubt in such a situation is equivalent to the finding that the defendant is not guilty. The law requires us to satisfy our consciences beyond a reasonable doubt of the defendant's guilt and· to give him the benefit of all doubt arising upon the testimony, as the case is essentially one of a criminal nature. *In re Verdon, 91 N. J. Law, 491;* *Staley* v. *South Jersey Co., 83 N. J. Eq. 300.*

Reasonable doubt has been defined by this court in *State* v. *Fisher, 95 N. J. Law 423,* as "That state of the case which, after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge." Let us apply that

rule of moral certainty here. In applying it we must recall that the innocence of these defendants is presumed. They are not obliged to prove it.

Goldenburg accompanied Corbett, upon a Sunday afternoon, to the house of an employe named Husch, with whom he was well acquainted, and the latter testified that Corbett stated that "anybody who went back to work would be carried out on a stretcher." Both Corbett and Goldenburg deny that either of them so declared, but both state that Husch said: "Now, if you fellows ain't going to keep away [from the plant] we will carry you away on a stretcher." The same rule of reasonable doubt, based upon a moral certainty, in the face of contradictory testimony, where neither of the defendants stand impeached for credibility, applies here, and entitles both of them to a discharge. Manifestly, if this case carried with it the death penalty, upon conviction, as in other days it did, no member of this court, it is safe to say, would vote to sustain these convictions. Yet, it should not be overlooked, that by sustaining them as the result of a trial without jury, in a criminal case, and where, in the language of Mr. Justice Garrison in the *Staley Case,* the trial court enjoys the unique distinction of being "both judge, jury and accuser as well," we are, by our affirmative determination, shortening the social, political and civil lives of these defendants to the extent of their prison sentence. Assuredly no jury constituted of men and women of the vicinage, under the directions concerning reasonable doubt, and the presumption of innocence, which we are accustomed to declare as the guiding rule of law at the circuits, would convict these defendants, and deprive them of their liberty and happiness, upon testimony which bespeaks upon every page that industrial animosity common to this unfortunate social warfare, and where the only test of illegality and proscription should be not the application by strikers of the legal, constitutional and American rules of ordinary civil life in every other occupation, but the actual or reasonable threatened exercise of force upon a worker unwilling to be coerced.

In such a situation, the only opportunity of obtaining anything akin to jury trial for defendants is furnished by this court. All the presumptions, rights and privileges to which a defendant is entitled at law, before a jury of his peers, should be invoked and applied in his behalf here; and in this instance the application of those principles should lead to the discharge of both defendants. Upon those grounds I shall vote to reverse in both cases, with the observation that manifestly the time is not unpropitious for legislative intervention providing for the application in the first instance of the ordinary constitutional and legal procedure of trial by jury in this class of cases.

*Mr. Walter C. Sedam, Mr. Henry Carless* and *Mr. Samuel F. Leber,* for the appellant.

*Mr. Russell E. Watson,* and *Messrs. R. E. & A. D. Watson,* for the respondents.

PER CURIAM.

The record in this case discloses that the two appellants, Milton Corbett and Perry Goldenburg, were convicted in the court of chancery of contempt of court of violating an injunction order of that court. Our reading of the record leads us to the conclusion that the conviction of Milton Corbett should be affirmed. The conviction of Perry Goldenburg should be reversed, on the ground that the evidence doesn't satisfy us that Perry Goldenburg intentionally violated the injunction order of that court beyond a reasonable doubt. The judgment of conviction as to Milton Corbett is affirmed, the judgment of conviction of Perry Goldenburg is reversed and set aside.

On appeal of Corbett—

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK—11.

*For reversal*—MINTURN—1.

On appeal of Goldenburg—
*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK—12.